# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| LARRY MILLER, | ) |
| | ) |
| and | ) |
| | ) |
| 11th SENATORIAL DISTRICT | ) |
| REPUBLICAN COMMITTEE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil Action No. 3:05CV266–HEH |
| | ) |
| MICHAEL BROWN, in his official capacity | ) |
| as Chairman of the Virginia State Board | ) |
| of Elections, | ) |
| | ) |
| BARBARA HILDENBRAND, in her official | ) |
| capacity as Vice-Chairman of the Virginia | ) |
| State Board of Elections, | ) |
| | ) |
| and | ) |
| | ) |
| JEAN R. JENSEN, in her official capacity | ) |
| as Secretary of the Virginia State Board of | ) |
| Elections, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
**(Granting in Part Plaintiffs' Motion for Summary Judgment)**

This is a suit for declaratory relief challenging the constitutionality of Section

24.2-530 of the Virginia Code.  Section 24.2-530 provides:  "All persons qualified to

vote, pursuant to §§ 24.2-400 through 24.2-403, may vote at the primary.  No person shall

vote for the candidates of more than one party."  Va. Code Ann. § 24.2-530 (2006).  The

matter is currently before the Court on Plaintiffs' Motion for Summary Judgment, filed

pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  All parties have filed

extensive memoranda of law in support of their respective positions.  The Court heard

oral argument on November 16, 2006.

## I.    Background

Section 24.2-530 establishes by legislative act an electoral process commonly

known as an "open primary."  It allows Republicans, Democrats, and Independents alike

to participate in the candidate selection process of each respective political party if that

party chooses to nominate its candidate by a publically funded primary.  Plaintiffs

maintain that the open primary allowed by § 24.2-530 violates the First Amendment to the

United States Constitution in that it interferes with the associational rights of each

respective party, particularly the right to exclude members of the other political party

from its nomination process.  The issue, as framed, is one of first impression.

The pertinent facts are not in dispute.  On June 4, 2004, the Republican Party of

Virginia ("RPV") amended its plan of organization ("Party Plan"), effective June 5, 2006,

to allow its affiliated committees to exclude voters from the Republican nomination

process who have participated in the nomination of non-Republican party candidates

---

[1]Under Rule 56(c), summary judgment is appropriate when the responses to discovery
and the record reveals that there is no genuine issue as to any material fact and the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477
U.S. 317, 322–23 (1986).  At this juncture, this case turns solely on an issue of law.

during the preceding five years.[2]  Plaintiff 11th Senatorial District Republican Committee

("11th District Committee") is an affiliated committee eligible to exercise this local option

under the amended Party Plan.

Subsequent to this rule change, on August 12, 2004, incumbent state Senator Steve

Martin ("Senator Martin") of the 11th Senatorial District of Virginia, selected a primary

as his method of nomination for the 2007 Senatorial election cycle.  Senator Martin

expressed his preference for a primary by using a modified version of a form prepared by

the Virginia State Board of Elections ("Board") for the 2003 Senatorial Election.[3]  The

modified form was sent to the Board by letter dated January 17, 2005.

In response to Senator Martin's expression of preference and pursuant to § 24.2-

509(b), on January 13, 2005, the 11th District Committee, as required by law, voted to

hold a primary for the nomination of Senator Martin for the 2007 election cycle.  In

accordance with the amendment to the RPV's Party Plan, the 11th District Committee

also chose to exclude voters who, in the past five years, had previously voted in a

Democratic party primary.  The sole exception were voters who pledged to support the

Republican party nominee in the general election.

---

[2]This type of primary is referred to as a "semiclosed primary," which allows party members and independents to vote in the primary.  A "closed primary," on the other hand, allows only party members to vote.

[3]As an incumbent, Senator Martin is allowed by statute to select the method of his renomination.  *See* Va. Code Ann. § 24.2-509.  The Republican Party has no statutory authority to override this decision.

On June 17, 2005, Plaintiff Larry Miller ("Miller"), in his capacity as Chairman of the Chesterfield County Republican Committee and the 11th District Committee, sent a letter to the Board advising them of the Committee's decision to implement the amendment to the RPV Party Plan and to exclude past Democratic voters from the primary.

In a written response dated February 9, 2005, the Secretary of the State Board of Elections, Jean Jensen ("Secretary Jensen"), advised Miller that:

> . . . as the Republican Legislative District Chair . . . you may take whatever actions you deem appropriate in compliance with the Party Plan to which you make reference.  Under the provision of § 24.2-516 of the Code of Virginia, however, the State Board of Elections may accept notification of the selection of the primary method of nomination for the 2007 election . . . no earlier than February 22, 2007, and no later than March 14, 2007. . . .
>
> . . .
>
> I know of no . . . provision of Title 24.2 wherein the General Assembly authorizes the State Board of Elections to implement the provisions of a particular political party plan that restricts the manner in which a voter may participate in the political party's primary. . . .
>
> . . .
>
> Accordingly, unless you are able to point to a specific provision of Title 24.2 enacted by the General Assembly of Virginia that authorizes the State Board of Elections to restrict voting in any primary conducted in the 11th Senate District in 2007, the State Board of Elections will have to comply with the law of the Commonwealth in effect at that time.

Compl. Ex. 4 (Letter from Jensen to Miller of 2/9/05).

Considering the foregoing letter to be an official action of the Board denying Plaintiffs' request to conduct a semiclosed primary, Plaintiffs bring this lawsuit under 42 U.S.C. § 1983 against the defendants in their official capacities for violating their right of free association under the First Amendment.  Plaintiffs ask the Court to strike the statutory framework for the open primary under Va. Code § 24.2-530 as unconstitutional.

As a by-product of the declaratory relief sought here, Plaintiffs also seek to stake out the boundaries of the concept of free association in the context of the Virginia electoral process.  A survey of constitutional challenges to state election laws governing party nominee selection yields no bright line defining the extent of permissible regulation. With respect to the more narrow issue of a political party's entitlement to conduct a semiclosed partisan primary, the jurisprudence is sparse but sufficiently illuminating to guide the Court.

Plaintiffs contend that the 11th District Committee, as a formal political entity, has a constitutionally protected right of free association which permits them to preclude members of other parties from voting in their candidate selection process.  They maintain that the open primary system, established by § 24.2-530 and administered by the State Board of Elections, enables their political opponents, and other voters not subscribing to the party philosophy, to participate in the nomination process.  In their view, the open primary process undermines their freedom of association as a viable political entity by diluting its party message and adulterating its candidate selection process.  They argue

that this encroachment on their constitutionally protected zone of interest undermines their right of free association protected by the First Amendment of the United States Constitution.

Relying on *Democratic Party of the United States v. Wisconsin ex. rel. LaFollette*, 450 U.S. 107, 122 (1981), Plaintiffs advance the notion that the freedom to associate for the common advancement of political beliefs, necessarily presupposes the freedom to identify the people who constitute the association – and to limit the association to those people only. Moreover, Plaintiffs contend that under *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359–60 (1997), a political party's right to choose its own nominees is core associational activity. "[T]he inclusion of persons [in the nominee selection process] unaffiliated with a political party may seriously distort its collective decisions." *LaFollette*, 450 U.S. at 122. Plaintiffs assert that this encroachment on the nomination process by persons unaffiliated with the 11th District Committee severely damages its constitutionally protected First Amendment right of association by facilitating the selection of a nominee for political office unrepresentative of the views or wishes of the party he or she purportedly represents.

In opposition, Defendants point out that Virginia's election laws do not require a political party's candidate for public office to be selected by a primary. Instead, political parties may opt to select their candidate by mass meeting, convention, or party canvas.[4]

_____

[4]*See* Va. Code Ann. § 24.2-508; Secretary Jensen Aff. at 3. In essence, a political party may employ any method of candidate selection its chooses, as long as the process is not

These other methods allow a political party to restrict participation in the electoral process to its identified members.  Therefore, the defendants argue that there is no statutory requirement in Virginia that a political party select its nominee by open primary.

The defendants also note that party registration is not required in Virginia.  To the extent that such formal party affiliation would be necessary in order to implement the semiclosed primary urged by Plaintiffs, the defendants argue that such forced association also has constitutional implications.  Defendants distinguish the statutory nominating scheme in Virginia from those at issue in the cases relied upon by Plaintiffs by the availability of other closed means of candidate selection and the absence of party registration.[5]  Given these distinguishing features, Defendants maintain that § 24.2-530 does not impose a constitutionally impermissible burden on the associational rights of Plaintiffs.

The defendants further counter that even if the Court finds that Virginia's open primary system severely burdens Plaintiffs' associational rights, the statute is justified by compelling state interests.  They assert that Virginia's open primary law protects the individual voter's right to vote in the primary of their choice, and to change their political affiliation, without interference by the State.  Defendants further contend that Virginia's open primary law preserves the integrity of the election process, encourages voter

conducted at public expense.

[5]The defendants appear to concede that a forced closed primary in a state with required party registration would be unconstitutional.  (Defs.' Opp. 2.)

participation, and protects individual voters from reporting their political preferences to the government.

The analytical framework for evaluating constitutional challenges to election laws was well articulated by the Supreme Court of the United States in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *California Democratic Party v. Jones*, 530 U.S. 567 (2000). This Court must initially assess the impact of the statute at issue on the First Amendment rights of the plaintiffs. The Court must then weigh the character and magnitude of the burden imposed by the State's regulation. Next, the Court must identify and evaluate the precise interest put forward by the State as justification for the burden imposed by the regulation. If the Court concludes that the burden on First Amendment rights is severe, warranting strict scrutiny, it must then decide if the restriction on the right of free association is narrowly tailored and advances a compelling state interest. *Anderson*, 460 U.S. at 789; *Jones*, 530 U.S. at 581; *see also Democratic Party of Wash. v. Reed*, 343 F.3d 1198, 1203 (9th Cir. 2003).

The Supreme Court in *Jones* also reiterated the settled notion that "the First Amendment protects 'the freedom to join together in furtherance of common political beliefs.'" *Jones*, 530 U.S. at 574 (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214–15 (1986)). The Court further confirmed that "our cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the

8

party's ideologies and preferences.'" *Id*. at 575 (alteration in original) (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 224 (1989)). The right of political parties to freely associate is unquestionably entitled to First Amendment protection. *Elrod v. Burns*, 427 U.S. 347, 357 (1976).

The Court will now turn to the question of whether § 24.2-530, which allows members of parties other than the 11th District Committee to have a voice in its candidate selection process, unduly burdens the Committee's right of association. In other words, does the scope of the Committee's constitutional right of association include a corollary right not to associate with voters who are members of other parties. This right of exclusion was clearly recognized by the Supreme Court in *Jones*: "a corollary of the right to associate is the right not to associate." *Jones*, 530 U.S. at 574. "'Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.'" *Id*. (quoting *LaFollette*, 450 U.S. at 122, n.22).

Given the right of the 11th District Committee to limit participants in the selection of its candidates for political office to members of its party and Independents, the central issue becomes whether § 24.2-530 imposes an unreasonable burden on this associational right.

States unquestionably have a role in structuring and monitoring the process of primary elections. *Id*. at 572. States have historically been empowered to enact

9

reasonable regulation of parties, elections, and ballots to safeguard the democratic process. *See Timmons*, 520 U.S. at 369–70 (state may prohibit an individual from appearing on the ballot as a candidate of more than one party); *Burdick v. Takushi*, 504 U.S. 428, 441–2 (1992) (approving Hawaii's prohibition on write-in voting); *Tashjian*, 479 U.S. at 217 (asserting that states have broad powers to prescribe the time, place, and manner of holding elections); *Storer v. Brown*, 415 U.S. 724, 736 (1974) (state may bar from the ballot any independent candidate who had voted in a party primary or been registered as a member of a political party within one year prior to the immediately preceding primary election); and *Rosario v. Rockefeller*, 410 U.S. 752, 761–62 (1973) (upholding state's right to impose a party registration requirement at a reasonable time in advance of a primary election).

While recognizing the authority of states to regulate elections to ensure the integrity of the democratic process, the Supreme Court has "continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution." *Jones*, 530 U.S. at 573. In each of the foregoing cases, the Court weighed the burden imposed on the party's associational rights against the state's duty to police the democratic process.

The constitutional boundaries between a state's right to regulate aspects of the electoral process and a political party's First Amendment right to select a candidate of its choice appears to be roughly delineated in a series of Supreme Court cases. The critical

element distilled from the analysis appears to be a right of unfettered expression embodied in the identity of the party's candidate.  "The independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees."  *Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 616 (1996).

In *LaFollette*, the Court addressed the question of whether, "once Wisconsin has opened its Democratic Presidential preference primary to voters who do not publicly declare their party affiliation, it may then bind the National Party to honor the binding primary results, even though those results were reached in a manner contrary to National Party rules."  *LaFollotte*, 450 U.S. at 120.  The Court concluded that the interest advanced by the state did not justify the substantial intrusion into the associational freedom of the members of the National Party.  *See id*. at 126.  In articulating the rationale for its decision, the Court restated that "the freedom to associate for the 'common advancement of political beliefs,' necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only."  *Id*. at 122 (citation omitted).

Several years later, the Supreme Court again examined the right of political parties to determine which individuals may participate in its candidate nomination process.  In *Tashjian*, the Court reviewed the constitutionality of a Connecticut statute that required voters in any political party primary to be registered members of that party.  *See Tashjian*,

11

479 U.S. 210–11.  The Republican Party of Connecticut had adopted a party rule that permitted independent voters, namely registered voters not affiliated with any party, to vote in Republican primaries.  *Id*. at 210.  The state party challenged this eligibility provision on the ground that it deprived the party of its First Amendment right to enter into political association with individuals of its choosing.  *Id*. at 211.  Again, the Court found the state's justification for restricting eligibility to be insubstantial and held that, as applied, the Connecticut statute impermissibly burdened the associational rights of the party.  *See id*.

In *Jones*, the Court assessed the constitutional soundness of Proposition 198.  *See Jones*, 530 U.S. at 569–70.  Prior to the adoption of Proposition 198, California law established closed partisan primaries as the method of selecting candidates for public office.  *Id.* at 570.  Under the closed primary system, only a political party's members could vote on its nominees.  *Id*.  Proposition 198 established a blanket primary system, in which "each voter's primary ballot now lists every candidate regardless of party affiliation and allows the voter to choose freely among them."  *Id*.  The candidate of each party who wins the most votes is that party's nominee for the general election.  *Id*.  Each political party's plan prohibited nonmembers from voting in that party's primary.  *Id*. at 571.  All established political parties in the State of California filed suit challenging the effect of Proposition 198 on their rights of association.  *Id*.  Justice Scalia, speaking for the Court, noted that "Proposition 198 forces political parties to associate with – to have

12

their nominees, and hence their positions, determined by – those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Id.* at 577.  In the final analysis, the Court concluded that it could conceive of "no heavier burden on a political party's associational freedom."  *Id*. at 582.  "Proposition 198 is therefore unconstitutional unless it is narrowly tailored to serve a compelling state interest."  *Id*. (*citing Timmons*, 520 U.S. at 358 ("Regulations imposing severe burdens on [parties'] rights must be narrowly tailored and advance a compelling state interest.")).

More recently in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Court rejected a First Amendment challenge to Oklahoma's semiclosed primary system.  The system under review allowed a political party to invite only its own party members and voters registered as Independents to vote in the party's primary.  *Id*. at 584.  The Libertarian Party of Oklahoma filed suit when the State Election Board denied its request to open its party primary to all voters without regard to party affiliation.  *Id*. at 585.  The Board authorized the primary to be open to Independent voters, but not voters registered with other political parties.  *Id*.

The Court in *Clingman* distinguished the Oklahoma regulation from the one struck down in *Tashjian*, which disallowed a political party from inviting Independents from participating in its primary.  *Id*. at 587.  The regulation in dispute in *Clingman* affected only voters already affiliated publically with another political party.  *Id*.

13

In finding that Oklahoma's semiclosed primary system did not severely hinder associational rights, the Court commented that the semiclosed primary "preserv[es] the political parties as viable and identifiable interest groups, insuring that the results of a primary election . . . accurately reflec[t] the voting of the party members." *Id*. at 594 (alterations in original) (internal quotations omitted).

A careful review of Supreme Court jurisprudence invalidating statutory restrictions on a political party's method of nominating candidates reveals several common elements. In *LaFollette*, *Tashjian,* and *Jones*, the regulations found by the Court to be overly burdensome were both mandatory and exclusive. None of the regulations at issue in those cases appeared to offer the political parties any alternative form of candidate selection with party controlled participation.

There is little doubt that a statute forcing a political party to select its nominee solely by open primary would pose a severe and perhaps constitutionally impermissible burden on its freedom of association. Indeed, the resulting selection would hardly reflect the true sentiments of the actual members of the political party. Moreover, Defendants appear to concede this point. The defendants, however, argue that the statutory scheme in Virginia is distinguishable, because it does not force a political party to participate in an open primary. The Virginia open primary law merely permits a party to utilize an open primary as its method of candidate selection if it chooses to do so. If the party wishes to

14

exclude nonmembers, it may conduct either a mass meeting, convention, or a party canvas.[6]

Therefore, from a facial perspective, if § 24.2-530 was the only means of selecting a party's nominee, the statute may well pose a severe burden on a political party's associational freedom. *See Miller v. Brown*, 462 F.3d 312, 318 (4th Cir. 2006). The defendants maintain, however, that Virginia's election law must be examined in its totality to determine whether it imposes an impermissible burden. Only "governmental action that may have the effect of curtailing freedom to associate is subject to the closest scrutiny." *Morse v. Republican Party of Va.*, 517 U.S. 186, 228 (1996) (internal quotations omitted). It is this Court's view that the statute must be viewed in context of all available methods of candidate selection under Virginia law. After undertaking a facial review of Virginia's nomination scheme, the Court will turn to the question of whether Virginia's election law is constitutionally sound as applied to the plaintiffs under the more narrow facts of this case.

In determining whether or not Virginia's election law has the effect of curtailing a political party's freedom of association, the Court must initially identify the scope of review. In other words, must each alternative candidate selection method provided by Virginia law independently satisfy Plaintiffs' associational rights as Plaintiffs suggest? Or is it sufficient if the statutory scheme as a whole affords a political party the right to

---

[6]This appears to be consistent with the Republican Party Plan which allows individual district committees the option of choosing an open primary.

15

limit the nomination process to persons of its choice?  Central to the analysis is a

determination of whether a political party has an established right to select the method by

which its candidates are nominated.  This issue appears to be well settled.

Neither the United States Constitution, nor any of its amendments, dictates how

candidates for state or local office will be selected.  *Fortson v. Morris*, 385 U.S. 231, 234

(1966).  States are vested with broad latitude in determining how intra-party contests for a

political party's nomination are resolved.  As an alternative to primaries, states have the

right to establish  party conventions as the sole means for selecting a party's candidate for

public office.  *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974).

In *White*, the Supreme Court rejected a challenge to a Texas candidate selection

system under which large political parties were required to nominate candidates by

primary, smaller parties by either primary or nominating convention, and newly-created

political parties by precinct nominating conventions.  *Id*. at 770–72.  The Court held that

as long as the process was not invidiously discriminatory, the state had the authority to

dictate how intra-party election contests would be settled.  *Id*. at 781.  The Court found

nothing constitutionally offensive about providing different candidate selection formats

for various categories of political parties based on the extent of their membership.  *Id*. at

770–72.

In *Burdick v. Takushi*, 504 U.S. 428 (1992), the Court reiterated that "when a state

election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the

16

First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id*. at 434 (quoting *Anderson v. Celebreeze*, 460 U.S. at 780, 788 (1983)).

The Virginia election law is even less restrictive than those approved by the U.S. Supreme Court in *Forston* and *American Party of Texas*.  Rather than dictate a single method of candidate selection, Virginia law provides a political party with four alternatives – three closed and one open.  This in effect affords a political party the broadest possible opportunity to exercise its right of self-governance.  Except under one limited circumstance under Virginia law, the party alone has the unfettered discretion to decide who participates in its candidate's selection process.

Plaintiffs acknowledge that they have no constitutional right to select their nominee by primary, but nevertheless contend that if Virginia law offers that optional method of nomination, the party has a First Amendment right to demand that participation be limited to its members only.  Plaintiffs, however, can offer no specific authority to bolster this contention.

Plaintiffs support their argument by analogy to free speech cases.  Their rationale flows from the unassailable, but inapposite, proposition that the state may not justify severely burdening a particular method of expression by offering an alternative, and presumably more acceptable, method of exercising that First Amendment right.  *See Spence v. Washington*, 418 U.S. 405, 411 n.4 (1974).  *Spence* involved Spence's inverted

display of an American flag in protest to the United States' invasion of Cambodia. *Id*. at

405–06.  The Court essentially held that the state's invitation to Spence to display his flag

elsewhere in a similar manner would not cure an otherwise unreasonable exercise of time,

place, and manner restriction. *See id*.  To redirect Spence's message to an alternative

forum would suppress his unalienable right to address his protest to the audience of his

choice. *Id*.

Unlike the right to speak at issue in *Spence*, Plaintiffs in the immediate case do not

have an analogous constitutional right to select their candidate by primary. *See San

Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 36 n.78 (1973).  The First

Amendment right under review in this case is the general right of the plaintiffs to select

their own political candidate in a process unadulterated by outsiders.  The Virginia

election law not only provides for the full exercise of that First Amendment right, but

affords each political party wide latitude in designating the method by which the selection

of its candidate will be carried out.  The United States Constitution requires no more.

In reviewing the facial constitutionality of § 24.2-530, this Court is mindful of the

teachings of the U.S. Supreme Court.  A court may invalidate a state statute only if it is

unconstitutional in all applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Moreover, "if an otherwise acceptable construction of a statute would raise serious

constitutional problems, and where an alternative interpretation of the statute is 'fairly

possible,'" this Court is "obligated to construe the statute to avoid such problems." *INS v.*

18

*St. Cyr*, 533 U.S. 289, 299–300 (2001) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).  Moreover, this Court acknowledges that § 24.2-530 is presumed to be constitutional.  *Faircloth v. Finesod*, 938 F.2d 513, 516 (4th Cir. 1991).

Based on the foregoing analysis, this Court is of the opinion that, with one limited exception, § 24.2-530, when viewed in the context of Virginia's overall candidate nominating scheme, does not impermissibly overburden the First Amendment rights of Virginia political parties.  The one questionable application involves the tension between § 24.2-530 and § 24.2-509, which allows an incumbent to force his or her political party to renominate him or her only by the method the incumbent selects.[7]  This is the factual setting of the second facet of Plaintiffs' specific complaint in this case.  They contend that even if § 24.2-530 is not facially invalid, it is unconstitutional as applied to the primary election, which may be held in 2007 in the 11th Senatorial District.[8]

Although Senator Martin has not legally declared his candidacy, he has indicated to the Board that he will be seeking reelection in 2007.  Senator Martin has expressed his

---

[7]At oral argument, the Commonwealth of Virginia argued that the combined effect of the statutes do not create a constitutionally impermissible burden on the First Amendment rights of the 11th District Republican Committee.  The Deputy Attorney General of Virginia maintained that the Republican Committee could, if it wished, "repudiate" the nominee selected by the primary conducted at Senator Martin's insistence, and select its own candidate using a closed system.  Such repudiation would have no legal force and effect, because the Virginia Board of Elections would be required by statute to certify the winner of the primary as the official Republican candidate.  *See* Va. Code Ann. §§ 24.2-528, -535.

[8]Obviously, § 24.2-530 is only applicable if Senator Martin should have a primary opponent.  *See* Va. Code Ann. § 24.2-526.

intention to exercise his statutory right under § 24.2-509, which allows him as an incumbent to control the method of his renomination. The 11th District Committee opposes the selection of their senatorial candidate by an open, all-inclusive system. They argue that the resulting interplay between §§ 24.2-530 and 24.2-509 in effect forces the 11th District Committee to conduct a mandatory open primary for the selection of the party candidate. The United States Court of Appeals for the Fourth Circuit has held that the type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party. *See Miller*, 462 F.3d at 318. The court in *Miller* went on to conclude that it could envision "'no heavier burden on a political party's associational freedom.'" *Id.* (quoting *Jones*, 530 U.S. at 582). This finding triggers a strict scrutiny review of Virginia's open primary law as applied to the specific facts of Plaintiffs' claim. Consequently, this Court must decide if the regulatory effect of § 24.2-530, operating in tandem with § 24.2-509, is narrowly tailored and advances a compelling state interest.[9] *See Anderson*, 460 U.S. at 789.

The Commonwealth of Virginia argues that the Virginia open primary law, in all applications, serves important regulatory interests and that this will usually be enough to justify a reasonable, nondiscriminatory restriction on a political party's associational rights. *See Clingman*, 544 U.S. at 586. The defendants advance a number of state

---

[9]Although not specifically raised, it is unlikely that an incumbent's statutory privilege to select the method of his or her renomination would constitute a sufficiently compelling state interest to trump a political party's right to select its nominee.

regulatory interests, which they argue are sufficiently important, and compelling, to justify Virginia's open primary law.  First, the defendants point out that Virginia's open primary law guarantees all registered voters the right to vote in the primary of their choice, and to change their political affiliation without interference by the State.  Second, the law protects individual voters freedom from reporting their political preferences to the government.  And third, the open primary law promotes the integrity of the electoral process and encourages voter participation.  As noble as these goals may be, each of these arguments have been squarely rejected by the Supreme Court as sufficiently compelling to justify the severe burden of a forced open primary.

Many of the compelling state interests argued by the Commonwealth in this case were considered by the Supreme Court in *Jones*.  Among these purportedly compelling state interests, was the protection of the individual voter's right to associate with a political party of his choice and to change his political affiliation.  The Supreme Court found these interests insufficient to justify the state's overly burdensome restriction on the state's nominating process.  The Court noted that "a 'nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications.'" *Jones*, 530 U.S. at 583 (quoting *Tashjian*, 479 U.S. at 15–16 n.6).

The second interest offered by the Commonwealth to justify an open Republican primary in 2007 in the 11th Senatorial District, is the protection of the individual voter's

freedom from reporting his or her political preferences to the government. Again, the Supreme Court in *Jones* found this argument unpersuasive. "Even if (as seems unlikely) a scheme for administering a closed primary could not be devised in which the voter's declaration of party affiliation would not be public information, we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a 'compelling one.'" *Id*. at 585.

Finally, Defendants assert that the Virginia open primary law promotes the integrity of the electoral process and encourages voter participation. These interests are laudable, but also fall short of being compelling ones. *See Jones*, 530 U.S. at 584–85. While promoting the integrity of the electoral process may be a compelling interest, the defendants have not shown that an open primary is necessary to the integrity of the electoral process in this case. *See Eu*, 489 U.S. at 231–32 (finding that the state failed to show a compelling interest by demonstrating that ceratin regulations of internal party governance were necessary to the integrity of the electoral process). In other words, "a state cannot justify regulating a party's internal affairs without showing that such regulation is necessary to insure an election that is orderly and fair," which Defendants have failed to do in this case. *Eu*, 489 U.S. at 233.

This Court is therefore of the opinion that as applied to the proposed 2007 11th Senatorial District Republican primary, § 24.2-530 is neither narrowly tailored to serve a legitimate state interest nor justified by any compelling state regulatory interest offered by

the defendants.  While § 24.2-530 survives facial constitutional challenge, it is constitutionally infirm as applied to the narrow facts of this case.

Section 24.2-530 is constitutionally sound when engrafted onto a statutory scheme providing for alternative, less restrictive means of candidate selection.  When the Republican Party's discretion is foreclosed by Senator Martin's invocation of § 24.2-509, mandating a forced open primary, the confluent effect impermissibly undermines the 11th District Committee's right of free association.  This narrow and perhaps infrequent application of § 24.2-530 violates the First Amendment right of the plaintiffs in this case.

Therefore, in the event that a Republican primary is held in 2007 in the 11th Senatorial District of Virginia, the defendants are enjoined from requiring the plaintiffs to hold an open primary.

An appropriate Order will accompany this Memorandum Opinion.


                                    _____/s/_____
                                    UNITED STATES DISTRICT JUDGE

Date: December 1, 2006
Richmond, VA